# IN THE COURT OF APPEALS OF IOWA

No. 22-0281
Filed August 31, 2022

**IN THE INTEREST OF B.J.,**
**Minor Child**

**J.J., Mother,**
　　　Petitioner-Appellee,

**C.S., Father,**
　　　Respondent-Appellant.
_____


Appeal from the Iowa District Court for Wapello County, William S. Owens, Associate Juvenile Judge.


A father appeals the termination of his parental rights. **AFFIRMED.**


Jonathan Willier, Centerville, for appellant father.

Heather M. Simplot of Harrison, Moreland, Webber & Simplot, P.C., Ottumwa, for appellee mother.

Lynnette M. Lindgren of Faulkner, Broeman & Lindgren, Oskaloosa, attorney and guardian ad litem for minor child.


Considered by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

This is an appeal from the termination of a biological father's[1] parental rights to his nine-year-old child. Termination was ordered after the mother filed a petition based on abandonment pursuant to Iowa Code section 600A.8(3)(b) (2021).

## I.    Factual and Procedural Background.

Shortly after the mother became pregnant, she informed the father he might be the child's biological father. However, at the child's birth, a different man was named on the birth certificate as the child's legal father. Despite this, the father insisted he was the child's father and declared so publicly. Even though he believed himself to be the biological father, the father did not take any meaningful steps to develop a relationship with or support the child. He also took no steps to disestablish the legal father's paternity and establish his own. Six months after the child's birth, the father went to prison, where he remained at the time of the termination hearing.

In 2020, the legal father's paternity was disestablished. The father took action soon thereafter to establish his own paternity. Even after his paternity was established, he did not make any meaningful attempt to contact the mother or the child.

As the father took steps to establish his paternity, the mother filed a petition to terminate his rights on the basis of abandonment under Iowa Code chapter 600A. The mother has been in a relationship with her now-husband for several years, and the step-father wants to adopt the child. The child testified at

---

[1] We will refer to the biological father simply as "the father."

the termination hearing that she wants to be adopted by her step-father and has never interacted with the father.

The juvenile court terminated the father's rights, finding the statutory grounds for abandonment had been met and that termination would be in the child's best interests. The father appeals. He contends his rights should not be terminated because the mother failed to prove abandonment, as she interfered with his ability to form a relationship with the child.

## II.     Standard of Review.

"Private termination proceedings under chapter 600A are reviewed de novo. Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses." *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020) (internal quotation marks and citations omitted). We give a parent's rights due consideration, but our paramount concern is the child's best interests. Iowa Code § 600A.1.

## III.     Termination Based on Abandonment.

Private termination proceedings under Iowa Code chapter 600A follow a two-step process. *B.H.A.*, 938 N.W.2d at 232. First, a ground for termination must be established by clear and convincing evidence. *Id.* Second, it must be established by clear and convincing evidence that termination is in the child's best interests. *Id.* Here, the father only challenges the first step, so we limit our decision to that step.

The district court found the mother proved by clear and convincing evidence that the father abandoned the child. When, as here, the child is six months of age or older at the time of the termination hearing,

a parent is deemed to have abandoned the child unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

(1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.

(2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.

(3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). A parent's subjective intent, "unsupported by evidence of acts specified in [section 600A.8(3)(b)] manifesting such intent," does not preclude a finding of abandonment. *Id.* § 600A.8(3)(c).

The father does not challenge the juvenile court's finding that he failed to support the child according to his means. With this concession, we could end our analysis here. "A parent is deemed to have abandoned their child unless they *both* make reasonable financial contributions *and* maintain monthly contact, so the [petitioning parent] only need[s] to prove the [respondent parent] failed at one of the two prongs to show" abandonment. *In re J.B.*, No. 21-1420, 2022 WL 951053, at *6 (Iowa Ct. App. Mar. 30, 2022) (emphasis added). So, by admitting he failed on one of the two necessary elements of a continuing parent-child relationship, the father concedes he abandoned the child within the meaning of section 600A.8(3)(b). *See In re K.B.*, No. 22-0027, 2022 WL 3065365, at *2 (Iowa Ct. App. Aug. 3, 2022) (concluding a mother established abandonment when she

presented evidence that the father made no financial contributions when it was within his means to provide something); *J.B.*, 2022 WL 951053, at *6.

Nonetheless we continue on to address the second element as well. The father does not challenge the findings that he failed to visit the child at least monthly, *see* Iowa Code § 600A.8(3)(b)(1), failed to regularly communicate with the child or the mother, *see id.* § 600A.8(3)(b)(2), or failed to openly live with the child for a period of six months in the one-year period immediately before the termination hearing, *see id.* § 600A.8(3)(b)(3). Instead, he focuses on the final clause in section 600A.8(3)(b)(1) and (2)—contending the mother prevented him from having regular visits or communications with the child.

The evidence does not support the father's argument. We first note that the father's incarceration does not excuse his failure to maintain the necessary contact to avoid termination of his rights. *See In re X.Z*, No. 16-0765, 2016 WL 6637765, at *2 (Iowa Ct. App. Nov. 9, 2016). We also note that the mother has no obligation to encourage contact between the father and the child. *See* Iowa Code § 600A.8(3)(c) ("[T]he court shall not require a showing of diligent efforts by any person to encourage the parent to perform the acts specified in [section 600A.(8)(3)(b)]."). The father has the obligation to make the effort to maintain the necessary contact. *See id.* ("The subjective intent of the parent, whether expressed or otherwise, unsupported by evidence of acts specified in [section 600A.8(3)(b)] manifesting such intent, does not preclude a determination that the parent has abandoned the child."); *see also In re T.K.*, No. 16-0029, 2016 WL 4384869, at *2 (Iowa Ct. App. Aug. 17, 2016) (noting "the father's actions did not reflect a meaningful effort to be involved in [the child's] life"). No meaningful effort

was made here. The evidence establishes that the father made very minimal attempts at contacting the child. In fact, the father admits he "kind of gave up" in the period between the child's birth and when the former legal father's paternity was disestablished several months before the termination hearing—a period of roughly nine years. This "giving up" is made apparent by the fact that the father has only seen the child twice, the first being unintentional and the second being by video on the first day of the termination hearing. As far as other communication, the father sent two letters to the mother, and an attempted later contact with the child came from the father's sister, not the father. We find no evidence supporting the father's claim that the mother prevented him from maintaining required contact with the child. The father's minimal efforts fall squarely within the statutory definition of what it means "to abandon a minor child." *See* Iowa Code § 600A.2(20) (defining the phrase to mean "that a parent . . . rejects the duties imposed by the parent-child relationship . . . , which may be evinced by the person, while being able to do so, . . . making only a marginal effort . . . to communicate with the child").

## IV. Conclusion.

We find clear and convincing evidence that the father abandoned the child within the meaning of Iowa Code section 600A.8(3)(b). Accordingly, we affirm the decision of the juvenile court terminating the father's parental rights to this child.

**AFFIRMED.**